DICKINSON, Justice,
Concurring in Part and Dissenting in Part.
¶ 56. The state may not “censor what the people hear as they undertake to decide for themselves which candidate is most likely to be an exemplary judicial officer. Deciding the relevance of candidate speech is the right of the voters, not the State.” Republican Party of Minnesota v. White, 536 U.S. 765, 794, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002) (Kennedy, J., concurring).
¶ 57. Judge Osborne’s malevolent, racist words should be offensive to all rational, fair-minded people. As judicial officers, however, we are required to follow the law. With the utmost respect to the justices comprising the majority, I cannot conclude that this Court is today following the law. I therefore must respectfully dissent in part.

The Law

¶ 58. The controlling law for governmental attempts to control the speech of elected judges is White, in which the United States Supreme Court addressed the question of “whether the First Amendment permits the Minnesota Supreme Court to prohibit candidates for judicial election in that State from announcing their views on disputed legal and political issues.” Id. at 768, 122 S.Ct. 2528. In deciding that states may not prohibit judicial candidates from making speeches on political issues during a campaign, the White Court noted that political speech is a category of speech that is “at the core of our First Amendment freedoms.” Id. at 774, 122 S.Ct. 2528. In reviewing some of *122 its precedent, the White Court went further to state:
“The role that elected officials play in our society makes it all the more imperative that they be allowed freely to express themselves on matters of current public importance.” Wood v. Georgia, 370 U.S. 375, 395, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962). “It is simply not the function of government to select which issues are worth discussing or debating in the course of a political campaign.” Brown v. Hartlage, 456 U.S. 45, 60, 102 S.Ct. 1523, 71 L.Ed.2d 732 (1982) (internal quotation marks omitted). We have never allowed the government to prohibit candidates from communicating relevant information to voters during an election.
White, 536 U.S. at 781-82, 122 S.Ct. 2528. Thus, according to White, this Court is constitutionally prohibited from punishing a candidate for judicial office for “announcing their views on disputed legal and political issues.”
¶ 59. Indeed, this Court recently has held that judges do not abandon their constitutional rights when they take the oath of office, and that this Court may not impose sanctions where doing so would contravene an individual’s constitutional rights. Miss. Comm’n on Judicial Performance v. Wilkerson, 876 So.2d 1006, 1010 (Miss.2004).

Judge Osborne’s Statement

¶ 60. According to the Commission, Judge Osborne — referring to the appointment of two local African-Americans to the Greenwood Election Commission by a Caucasian mayor — made the following statement: “White folks don’t praise you unless you’re a damn fool. Unless they think they can use you. If you have your own mind and know what you’re doing, they don’t want you around.”
¶ 61. I cannot agree with the majority’s single sentence with which it attempts to distinguish White. The majority says only that “Judge Osborne’s disparaging insults went well beyond the realm of protected campaign speech expressing views on disputed legal and political issues....” Maj. Op. at 20. To the contrary, Judge Osborne was clearly announcing his view on a disputed political issue-his disagreement with the Greenwood mayor’s appointments to the Greenwood Election Commission. Disagreement with an elected mayor’s political appointments to an election commission would seem to me to easily qualify as a “disputed political issue.”
¶ 62. Judge Osborne made his statements in an election year, after he had qualified as a candidate. He was speaking in his capacity as a qualified candidate. The subject of his inflammatory statements was his criticism of two political appointments to the Greenwood Election Commission. Thus, Judge Osborne’s speech-offensive though it was-constitutes protected political speech, and this Court, in my view, is powerless to punish him for it.
¶ 63. With the greatest respect for my esteemed colleagues in the majority, I find it curious that the majority virtually ignores White (recognized as the controlling authority on the issue of restricting a judicial candidate’s speech), and then proceeds to ignore its holding; relying instead on Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), a case decided forty years ago which involves a school teacher, not a judicial candidate.
¶ 64. In fairness to the majority, I recognize — and must point out — that White did not address the precise question of “whether a State may restrict the speech of judges because they are judges-for example, as part of a code of judicial con *123 duct....” White, 536 U.S. at 796, 122 S.Ct. 2528 (Kennedy, J., concurring). Justice Kennedy stated:
Whether the rationale of [Picketing ] and Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), could be extended to allow a general speech restriction on sitting judges — regardless of whether they are campaigning — in order to promote the efficient administration of justice, is not an issue raised here.
Id. In my view, however, there is no logical argument why the principles announced in White would not extend to any canon or other restriction on a judge’s right to free speech during the course of a political campaign.
¶ 65. Although I agree with the majority’s conclusions concerning all other matters, I cannot agree that Judge Osborne may be punished for making a political speech. Thus, I concur in part and dissent in part.
GRAVES, P.J., AND KITCHENS, J., JOIN THIS OPINION.